LAW OFFICES OF ALFRED H. SIGMAN
ALFRED H. SIGMAN - CA State Bar No. 049783
JANET E. BROWN - CA State Bar No. 163732
436 14th Street, Suite 415
Oakland, CA  94612
Telephone: (510) 839-3184
Facsimile: (510) 839-3406
E-mail: sigmanerisalaw@msn.com

E. DOUGLAS RICHARDS - KY State Bar No. 58086
333 West Vine  Street, Suite 300
Lexington, KY  40507
Telephone: (859) 259-4983
Facsimile: (859) 254-8639
E-mail: edrichards714@yahoo.com

ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENTLEY COATES, individually and on behalf of a class of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AGILENT TECHNOLOGIES and AGILENT TECHNOLOGIES, INC. DEFERRED PROFIT-SHARING PLAN, the HEWLETT-PACKARD COMPANY, and the HEWLETT-PACKARD COMPANY DEFERRED PROFIT-SHARING PLAN,<br><br>Defendants. | Case No. C 03 0498 RMW ADR RS<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Class Action** |

Plaintiff BRENTLEY COATES, individually and on behalf of the class of similarly situated participants in the AGILENT TECHNOLOGIES, INC. DEFERRED PROFIT SHARING PLAN ("AGILENT DPSP") and the HEWLETT-PACKARD COMPANY DEFERRED PROFIT-SHARING PLAN (HP

DPSP") hereby states and alleges by and through his attorneys:

## JURISDICTION and VENUE

1. Plaintiff brings this class action for declaratory, injunctive and equitable relief pursuant to ERISA §502, 29 U.S.C. §1132. This Court has subject matter jurisdiction over Plaintiff's claims under ERISA §502(e) and (f), 29 U.S.C. §1132(e) and (f), and 28 U.S.C. §1331.

2. Venue is proper in this District pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the employee pension benefit plans sued herein are both administered in this District, and, upon information and belief, the breaches alleged herein, or some of them, took place in this District.

3. This case should be assigned to the San Jose Division of this Court because the DPSP, the HP DPSP, and the AGILENT DPSP are benefit plans which were or are administered in Santa Clara County and/or one or more of the other counties encompassed by the San Jose Division. See Local Rule 3-2 (c) and (e).

## THE PARTIES

4. Plaintiff BRENTLEY COATES is, and at all relevant times has been, a participant, as defined in ERISA §3(7), 29 U.S.C. §1002(7), in the AGILENT DPSP or its predecessor, the HP DPSP. (Jointly referred to hereinafter as the "DPSP" or the "Plans".) Plaintiff resides in Somis, California.

5. At all relevant times herein, the Plans are or have been "employee pension benefit plans" and "employee benefit plans" within the meaning of ERISA §§3(3) and 3(2)(A), 29 U.S.C.

1  §§1002(3) and 1002(2)(A).

2      6.   At all relevant times, the Plans have been "defined
3  contribution" or "individual account" plans within the meaning
4  of ERISA §3(34), 29 U.S.C. §1002(34), in that the Plans have
5  provided for individual accounts for each participant and for
6  benefits based solely upon the amounts contributed by the
7  employer to the plan plus any Plan income, expenses, gains,
8  losses, and forfeitures, all as allocated annually to each
9  participant's individual account pursuant to the Plans' rules.

10     7.   On information and belief, Defendant AGILENT
11 TECHNOLOGIES, INC. ("AGILENT") is a corporation with its
12 principal place of business located in Palo Alto, California.
13 At all relevant times, AGILENT has been the plan sponsor of the
14 AGILENT DPSP, within the meaning of ERISA §3(16)(B), 29 U.S.C.
15 §1002(16)(B), and is the successor-in-interest to HEWLETT-
16 PACKARD, the original plan sponsor of the DPSP.

17     8.   At all relevant times, AGILENT has been the Plan
18 administrator of the AGILENT DPSP within the meaning of ERISA
19 §3(16)(A), 29 U.S.C. §1002(16)(A), because it has been so
20 designated in the governing plan instruments or because of its
21 status as Plan Sponsor.

22     9.   On information and belief, at all relevant times,
23 AGILENT was the named fiduciary of the AGILENT DPSP within the
24 meaning of ERISA §402(a), 29 U.S.C. §1102(a), and the Investment
25 Fiduciary of the AGILENT DPSP as specified in the Plan's
26 governing written instrument.

27     10.  After AGILENT split in June, 2000 from HEWLETT-PACKARD
28 to become a separate company, AGILENT designated HEWLETT-PACKARD

1 as the named fiduciary, investment manager, and administrator of
2 the AGILENT DPSP.
3    11.   Defendant HEWLETT-PACKARD COMPANY ("HP" or "HEWLETT-
4 PACKARD") is a corporation with its principal place of business
5 located in Palo Alto, California.
6    12.   At all relevant times, the Defendant HEWLETT-PACKARD
7 COMPANY served as the Investment Fiduciary of the HP DPSP as
8 specified in the HP DPSP's governing written instrument.
9    13.   At all relevant times, HP has been the plan sponsor of
10 the HP DPSP, within the meaning of ERISA §3(16)(B), 29 U.S.C.
11 §1002(16)(B) and is the original plan sponsor of the DPSP.
12    14.   At all relevant times, HP has been the Plan
13 administrator of the HP DPSP within the meaning of ERISA
14 §3(16)(A), 29 U.S.C. §1002(16)(A), because it has been so
15 designated in the governing plan instruments or because of its
16 status as Plan Sponsor.
17    15.   At all relevant times, HP was the named fiduciary of
18 the HP DPSP within the meaning of ERISA §402(a), 29 U.S.C.
19 §1102(a), and the Investment Fiduciary of the HP DPSP as
20 specified in the Plan's governing written instrument.  At all
21 relevant times, by reason of their positions as plan
22 administrators, named fiduciaries, and/or Investment
23 Fiduciaries, and/or by reason of their actions, defendants
24 AGILENT and the HEWLETT-PACKARD COMPANY, and each of them, are
25 and have been fiduciaries of the DPSP within the meaning of
26 ERISA §3(21), 29 U.S.C. §1002(21), in that each exercised
27 discretionary authority or discretionary control respecting
28 management of the DPSP, exercised authority or control

1 respecting management, investment, or disposition of the DPSP's
2 assets, and/or exercised discretionary authority or
3 discretionary responsibility in the administration of the DPSP.
4     16. Upon information and belief, at all relevant times
5 herein each defendant was an agent of each and all of the other
6 defendants in all matters relating to the DPSP and its successor
7 Plans, and each Defendant acted within the course and scope of
8 said agency regarding all matters alleged herein. The
9 Defendants, and each of them, were engaged in a joint and common
10 enterprise and acted within and pursuant to said common
11 enterprise regarding the DPSP and its successors.

**FACTS**

13     17. Plaintiff BRENTLEY COATES, age 60, began working for
14 HEWLETT-PACKARD in 1968, where he worked continuously until on
15 or about April 19, 2002, when he began receiving Worker's
16 Compensation payments for a work-related injury. Plaintiff
17 commenced participation in the Hewlett-Packard Deferred Profit-
18 Sharing Plan on or about 1971. Agilent terminated his
19 employment effective May 1, 2003, after he brought suit herein.
20     18. The HP DPSP, at the time of Plaintiff's initial
21 participation, was a deferred profit sharing plan qualified
22 under Revenue Ruling 56-497, C.B. 1956-2, 284. Pursuant to the
23 terms of the HP-DPSP, HEWLETT-PACKARD each year contributed an
24 amount equal to 10 percent of its adjusted net income for
25 allocation (along with forfeitures) to the individual accounts
26 of participants.
27     19. From its inception on October 31, 1956 until the late
28 1980's, the HP DPSP required that the individual accounts of

Case No. C 03 0498 RMW ADR RS
FIRST AMENDED COMPLAINT (CLASS ACTION)                          PAGE 5

participants *under* age 55 be invested in Fund A, a balanced fund consisting of investments in equities and bonds. For participants *over* age 55, it mandated that a fraction of his or her account be transferred from Fund A to Fund B, a fixed-income fund, such that by the time the participant turned age 65, all of his or her DPSP account balance would be invested in Fund B (the "asset transfer rule"). The asset transfer rule was set forth at page 70 of the DPSP's 1983 Summary Plan Description ("SPD") and at page 2 of the 1987 SPD, attached hereto as Exhibits A and B, respectively, and incorporated herein by this reference.

20. Upon information and belief, the fiduciaries of the HP DPSP adopted the asset transfer rule in order to assure the steady, periodic reallocation of the retirement assets of over-age 55 participants from the growth-oriented Fund A to the income-oriented Fund B.

21. At the same time, Defendants Hewlett-Packard and the Hewlett-Packard DPSP provided financial seminars and information to Plaintiff and his class stressing the prudence of the reallocation model implemented by the asset transfer rule.

22. In part, the financial educational information referred to in Paragraph 21, above, noted that for the older worker approaching retirement the primary question is not the historic "long term" average performance of equities but rather the average during the period the older worker or retiree is actually so invested.

23. In order to minimize the risk associated with the inherent price volatility of equities - that is, the chance that

1  the equities can be in a "bear" phase as the worker approaches
2  and enters retirement – the financial planning information
3  provided to Plaintiff and his class noted the importance of the
4  phased reallocation of retirement assets.
5     24.  Sometime before 1990, the DPSP revoked the mandatory
6  asset transfer rule and adopted a discretionary transfer
7  procedure which allowed over age-55 participants to decide
8  themselves – in October of each year – the allocation of their
9  account balances between Fund A and Fund B.
10    25.  In 1993, the HEWLETT-PACKARD COMPANY froze the DPSP
11 and ceased making contributions to it.  From then on, the value
12 of each participant's individual account became solely a
13 function of its earnings and losses.  Moreover, the DPSP
14 accepted no new participants.  As a result, the DPSP participant
15 population, demographically, consisted of an unusually large
16 rapidly aging group of employees.
17    26.  In October, 1999, Plaintiff COATES elected to allocate
18 100% of his DPSP account balance to Fund B, the fixed-income
19 fund. A true and complete copy of Plaintiff COATES' confirmation
20 of his allocation instruction to the Defendants is attached
21 hereto as Exhibit C and incorporated herein by this reference.
22 Defendants followed Plaintiff's instruction; they invested his
23 entire account balance in Fund B.
24    27.  On or about May 4, 2000, Defendants AGILENT and
25 HEWLETT-PACKARD COMPANY, acting in their fiduciary capacities,
26 announced to Plaintiff and all others similarly situated that
27 "in preparation for the Company split on June 2, 2000," HEWLETT-
28 PACKARD and AGILENT have established two separate DPSP plans,

1  effective May 1, 2000, but that Defendant HEWLETT-PACKARD would
2  continue "to manage" both plans' assets. (Exhibit D hereto and
3  incorporated herein by this reference.)  Upon information and
4  belief, the purported separation of the DPSP into two plans was
5  cosmetic only; the two "plans" continued to operate and function
6  *de facto* as a single plan for all practical purposes.
7       28.  The announcement of May 4, 2000 also stated that
8  Defendants AGILENT and HEWLETT-PACKARD
9           have decided to eliminate Fund B effective
             May 31, 2000.  On that date, account
10           balances in Fund B will be liquidated and
             automatically re-invested in Fund A, which
11           will be the only fund available in each
             company's DPSP plan.
12
13 *Id.*, p. D-1.
14      29.  In communicating Exhibit D to Plaintiff and the other
15 participants, in liquidating Fund B accounts and immediately
16 reinvesting the proceeds into Fund A accounts, and in related
17 acts and omissions, AGILENT and HEWLETT-PACKARD, and each of
18 them, were acting in their fiduciary capacities.
19      30.  Defendants claimed that "Because of compliance issues
20 with U.S. securities laws that govern a group trust of this
21 type, HP and Agilent have decided to eliminate Fund B . . . ."
22 *Id.* Upon information and belief, Defendants' allegation that
23 "compliance issues with U.S. securities laws" underlie the
24 termination of Fund B was false.
25      31.  On or about May 31, 2000, Defendants caused the
26 liquidation of all Fund B fixed-income investments by Plaintiff
27 and the members of his class and the automatic, immediate re-
28 investment of the proceeds of the liquidations into Fund A.

Case No. C 03 0498 RMW ADR RS
FIRST AMENDED COMPLAINT (CLASS ACTION)                    PAGE 8

32. At the time they took the actions described Paragraph 31, above, the Defendants knew, or should have known, *inter alia*, that the participants at that time consisted of an unusually disproportionate number of employees age 55 and older; that the participants had been encouraged and then permitted to invest in Fund B; that the Defendants had encouraged the participants to increase their investments in Fund B as they approached age 65; that the *immediate* divestiture of the participants' fixed income investments and reinvestment into a primarily equity-based portfolio violated the precepts of Modern Portfolio Theory as applied to this particular participant population; and, that the *immediate* reinvestment of the participants' fixed income retirement assets rather than their periodic reinvestment on a *cost-averaging* basis imprudently exposed Plaintiff and his class to unnecessary volatility and risk of loss at the worst time possible – just before their retirements.

33. Upon information and belief, before they took the actions described herein at Paragraph 31, the Defendants failed to retain or follow the advice of any independent legal counsel, professional financial planners, investment managers, actuaries, or other consultants with expertise to analyze and advise them regarding the issues identified in Paragraph 32, above, and related matters.

34. Upon information and belief, the Defendants, in their *fiduciary capacities*, failed to act prudently, solely in the interests of the over-age 55 participants in the fixed-income fund, or independently.

35. By forcing the liquidation of the class members' fixed-income investments and the immediate reinvestment of all liquidation proceeds into higher risk investments, Defendants AGILENT and HP, although acting in fiduciary capacities, failed to consider, *inter alia*, the earlier DPSP investment policies of first requiring and later allowing over age-55 participants including Plaintiff to invest in Fund B; the different investment time horizons appropriate to younger and older employees; the prudence of forcing older workers to divest completely the fixed-income Fund B investments, which they earlier had selected.

36. As a direct and proximate consequence of the acts and omissions of Defendants, and each of them, as alleged herein, the DPSP has suffered substantial losses reflected in the significant diminution of the value of the individual DPSP accounts of Plaintiff and class members.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings the Claims for Relief contained herein on behalf of himself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the Class defined as follows:

> **All Participants in the AGILENT TECHNOLOGIES, INC. DEFERRED PROFIT-SHARING PLAN and the HEWLETT-PACKARD DEFERRED PROFIT-SHARING PLAN whose individual accounts were invested in whole or in part in Fund B on May 4, 2000 and whose Fund B investment was liquidated thereafter and their beneficiaries, heirs, and successors.**

38. The requirements for maintaining this action as a class action under F.R.Civ.P. 23(a), (b)(1), and (b)(2) are

satisfied in that:

    a.    The members of the Class are so numerous that joinder of all members is impracticable. According to Defendants AGILENT and HP, "approximately 1500 individuals had some or all of their DPSP balances invested in Fund B as of May 4, 2000". (Exhibit D, page D-2 hereto.) The precise number of class members should be ascertainable from Defendants' initial disclosures and through further discovery, if necessary.

    b.    There are questions of law and fact common to the Class, including the following: whether defendants were fiduciaries of the Plans during the relevant time period; whether defendants breached the fiduciary duties they owed to members of the Class; whether the Plans and the Class members were injured by such breaches; whether defendants must make the Plans whole for its losses pursuant to ERISA §409, 29 U.S.C. §1109; and whether such losses should be allocated to Class members' individual accounts.

    c.    Plaintiff is a member of the Class and his claims are typical of the claims of the members of the Class, as Plaintiff and all members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of

|   |   |
|---|---|
| | herein. |
| d. | Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests antagonistic to or in conflict with those of the other Class members. Plaintiff is represented by legal counsel who specialize in ERISA derivative and class action litigation. |
| e. | Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants. Alternatively, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests, particularly in light of the fact that plaintiff seeks to obtain relief on behalf of the DPSP as a whole. |
| f. | Defendants have acted and/or failed to act, on grounds generally applicable to the Class; injunctive, declaratory and other appropriate equitable relief would be applicable to the Class as a whole. |

///
///

# FIRST CLAIM FOR RELIEF

**Breach of Fiduciary Duty Against All Defendants
For Imprudence
[ERISA §§404(a)(1)(B), 409, 502(a)(2), 29 U.S.C.
§§1104(a)(1)(B), 1109, 1132(a)(2)]**

39.  Plaintiff incorporates Paragraphs 1 through 38 above, as though fully set forth herein.

40.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a fiduciary discharge his duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

41.  ERISA's fiduciary duty of prudence implicates the primacy of a careful investigation of a course of action affecting the interests of plan participants and beneficiaries and encourages fiduciaries to seek the advice of qualified experts.

42.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires that a fiduciary shall discharge his duties with respect to a plan in accordance with the documents and instruments governing the plan only insofar as such documents and instruments are consistent with ERISA.

43.  ERISA § 409, 29 U.S.C. § 1109, provides that each defendant fiduciary is subject to such other equitable or remedial relief as the Court may order.

44.  ERISA § 405, 29 U.S.C. § 1105, provides that fiduciaries are jointly and severally liable for other

fiduciaries' breaches of fiduciary duty if (1) they knowingly participate in or knowingly undertake to conceal the acts and omissions of other fiduciaries; (2) by their failure to comply with ERISA § 404(a)(1) in carrying out their own responsibilities as fiduciaries, they enable other fiduciaries to commit a breach; or (3) they fail to make reasonable efforts to remedy breaches of which they have knowledge.

45. By their acts and omissions as alleged herein, the Defendants, and each of them, have breached ERISA § 404(a)(1)(B) duty of prudence by, *inter alia*, failing to recognize that the participants at the time of the liquidation of Fund B consisted of an unusually disproportionate number of employees age 55 and older; that the participants had been encouraged and then permitted to invest in Fund B; that the Defendants had historically encouraged the participants to increase their investments in Fund B as they approached age 65; that the *immediate* divestiture of the participants' fixed income investments and reinvestment into a primarily equity-based portfolio violated the precepts of Modern Portfolio Theory as applied to this particular participant population; and, that the *immediate* reinvestment of the participants' fixed income retirement assets rather than their periodic reinvestment on a *cost-averaging* basis wrongfully exposed Plaintiff and his class to unnecessary volatility and risk of loss at the worst time possible – just before their retirements.

46. The Defendants, and each of them, have further breached the ERISA § 404(a)(1)(B) duty of prudence by failing, *inter alia*, to retain or follow the advice of any independent

legal counsel, professional financial planners, investment managers, actuaries, or other consultants with expertise to analyze and advise them regarding the issues associated with the particular and extraordinary demographic characteristics of the DPSP participant population.

## SECOND CLAIM FOR RELIEF

**Breach of Fiduciary Duty Against All Defendants
For Failing to Act Solely In the Interest Of
Plaintiff and His class
[ERISA §§404(a)(1)(A), 409, 502(a)(2), 29 U.S.C.
§§1104(a)(1)(A), 1109, 1132(a)(2)]**

47.  Plaintiff incorporates Paragraphs 1 through 38 above, as though fully set forth herein.

48.  ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a fiduciary discharge his duties with respect to a plan solely in the interest of plan participants, and for the exclusive purpose of providing benefits to plan participants and beneficiaries.

49.  ERISA § 409, 29 U.S.C. § 1109, provides that each defendant fiduciary is personally liable for damages to the Plan and subject to such other equitable or remedial relief as the Court may order.

50.  Under ERISA § 502(a)(2)and(3), 29 U.S.C. § 1132(a)(2) and (3), a participant may bring suit to enjoin plan fiduciaries from any act or practice which violates ERISA or to obtain other appropriate equitable relief to redress defendants' fiduciary violations and to enforce the provisions of ERISA and the Plan.

51.  By their acts and omissions as alleged herein, the

Defendants, and each of them, have breached their duties under ERISA § 404(a)(1)(A), *inter alia*, by falsely stating to Plaintiff and his class that compliance issues with U.S. securities laws underlie the liquidation of Fund B; by failing even to investigate or verify the allegation; by failing to retain or follow the advice of any independent legal counsel, professional financial planners, investment managers, actuaries, or other consultants with expertise to analyze and advise them regarding the issues associated with the particular and extraordinary demographic characteristics of the DPSP participant population; by the *immediate* divestiture of the participants' fixed income investments and reinvestment into a primarily equity-based portfolio without consideration of any alternatives, such as liquidating Fund B and reinvesting the proceeds in Fund A on a dollar cost averaging basis, thereby exposing Plaintiff and his class to unnecessary volatility and risk of loss before their retirements.

52.   Each of the defendants is a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA §405, 29 U.S.C. §1105, because each knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing, or with reason to know, that such act or omission was a breach; enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his or its own fiduciary duties in the administration of its specific responsibilities giving rise to its status as a fiduciary; and/or knew or should have known of a breach by one or more other fiduciaries but failed to make reasonable efforts

under the circumstances to remedy the breach.

53. ERISA §409, 29 U.S.C. §1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA §409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate, including removal of the fiduciary.

54. ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), permits a plan participant to bring a suit for relief under ERISA §409.

55. As a consequence of defendants' breaches of fiduciary duty, the Defendants AGILENT DPSP and HP DPSP both suffered losses as reflected in the substantial diminution of the value of the individual accounts of plaintiffs and the Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

A. Certify this action as a class action pursuant to F.R.Civ.P.23;

B. Preliminarily enjoin the Defendants, and each of them, from soliciting from class members Releases of liability for the wrongdoing alleged herein without disclosing the existence of this lawsuit, the substance of the allegations contained herein, and the relief sought;

C. Declare that the Defendants AGILENT and HP, and each

1 of them, have breached their ERISA fiduciary duties to the Plans
2 and Plaintiffs and members of his class;
3     D.   Issue an order compelling the Defendants to restore to
4 the Plans all losses resulting from their breaches and to
5 equitably allocate said restoration to the individual accounts
6 of Plaintiff and members of the class;
7     E.   Award Plaintiff his attorneys' fees and costs pursuant
8 to ERISA §502(g), 29 U.S.C. §1132(g) and/or the Common Fund
9 doctrine; and
10     F.   Award such other and further relief as the Court deems
11 appropriate, equitable and just.

```
                              ALFRED H. SIGMAN
                              JANET E. BROWN
                              436 14th Street, Suite 415
                              Oakland, CA  94612
                              Telephone (510) 839-3184
                              Facsimile (510) 839-3406
                              E-mail: sigmanerisalaw@msn.com

                              E. DOUGLAS RICHARDS
                              333 West Vine Street, No. 300
                              Lexington, KY  40507
                              Telephone (859) 259-4983
                              Facsimile (859) 254 8639
                              E-mail: edrichards714@yahoo.com
```

Dated: August 15, 2003         By: _/s/ Alfred H. Sigman_____
                                   Alfred H. Sigman

                            ATTORNEYS FOR PLAINTIFF

F:\Cases\CASES\Coates 03-03\Complaint & AnswersAffDefs\FACfinal.wpd